UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JIMMIE C. ODOM-ALVARADO, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| TOM BENSON IMPORTS, INC., | § | SA-05-CA-0221 FB (NN) |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION
REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TO:    Hon. Fred Biery
United States District Judge**

This memorandum and recommendation addresses a motion for summary judgment filed by defendant Tom Benson Imports (Benson Imports). Through its motion, Benson Imports seeks judgment on claims brought by plaintiff Jimmie C. Odom-Alvarado. I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and the district court's order referring all pretrial maters to me for disposition by order or to aid the district court by recommendation where my authority as a Magistrate Judge is statutorily constrained.[1] After considering the motion and the pleadings in this case, I recommend that the motion for summary judgment be granted and that judgment be entered in favor of Benson Imports on all claims.

### Jurisdiction

The district court has jurisdiction in this case under 28 U.S.C. § 1331 because the case is a civil action brought under the laws of the United States—specifically, the Age Discrimination in Employment Act (ADEA) and the Family Medical Leave Act (FMLA).

---

[1] *See* docket entry #5.

**The Plaintiff's Claims**

Odom-Alvarado has sued Benson Imports alleging violations of the ADEA and the FMLA.  Odom-Alvarado was sixty years old at the time of the events that led to this lawsuit.  Prior to suing Benson Imports, the Equal Employment Opportunity Commission (EEOC) determined that there was reasonable cause to believe that Odom-Alvarado was not promoted because of her age and that she was discharged because she believed that she had been discriminated against because of her age.  In her complaint, Odom-Alvarado alleges that Benson Imports failed to promote her to the positions of warranty administrator and booker because of her age (the failure-to-promote claim) and that Benson Imports terminated her because of her age (the unlawful discharge claim).  She maintains that when the warranty administrator and booker positions became open, Benson Imports hired much younger people.  Odom-Alvarado further contends that Benson Imports denied her right to medical leave under the FMLA.

**Standard for a Motion for Summary Judgment**

A defendant in a civil action may move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure at any time.[2]  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3]

**Odom-Alvarado's Failure-to-promote Claim under the ADEA**

Benson Imports has moved for summary judgment on Odom-Alvarado's failure-to-promote claim.  In an employment discrimination case, the plaintiff bears the initial burden of

---

[2] FED. R. CIV. P. 56.

[3] Id.

establishing a prima facie case of unlawful discrimination.[4]  Benson Imports maintains it is entitled to summary judgment on Odom-Alvarado's failure-to-promote claim because no evidence exists that Odom-Alvarado applied for the warranty administrator and booker positions. To make out a prima facie case of age discrimination based on a failure to promote, Odom-Alvarado must show that "1) [s]he belongs to the protected class, 2) [s]he applied to and was qualified for a position for which applicants were being sought, 3) [s]he was rejected, and 4) another applicant not belonging to the protected class was hired."[5]  Benson Imports argues that Odom-Alvarado cannot meet this burden because she never told decision-maker Karen Scott that she was interested in the warranty administrator position or booker position until after the position was filled.  Benson Imports relies on Karen Scott's affidavit to support its argument.

In her affidavit, Scott attested that she was responsible for hiring personnel to fill Benson Imports's warranty administrator and booker positions.  Scott explained that the prior warranty administrator, Gaye Jackson, gave Benson Imports two-weeks notice on October 15, 2003.  Scott attested that October 15, 2003 was the last day of employment for Richard Lovering—Benson Imports's Director of Service.  Stephen Stohner replaced Lovering on October 16, 2003.  Scott explained that she was on vacation at the time Jackson gave her notice, so Stohner instructed Jackson to begin training Audrey Miorelli as warranty administrator.  Scott attested that when

---

[4]See *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 142 (2000).

[5]*Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680-81 (5th Cir. 2001).  See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (explaining that a plaintiff alleging that he was not promoted because of his race must make out a prima facie case by "showing (I) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications").  See also *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 324 (5th Cir. 2002) (setting out the requirements for a prima facie case in a failure-to-promote claim in a race discrimination case).

she returned from vacation, she learned that Celina Garcia—Benson Imports's booker—had asked for consideration as warranty administrator and that because she (Scott) did not feel that Miorelli was qualified for the position, she placed Garcia in the warranty administrator position. Scott stated that she acted quickly because Jackson had only one week of employment left to transition Garcia to the warranty administrator position. Scott explained that she choose Roland Ibarra—Benson Imports's assistant booker—to replace Garcia as booker. Scott attested that she did not know that Odom-Alvarado was interested in either the warranty administrator or the booker position, that Odom-Alvarado never spoke to her about the warranty administrator position until after she hired Garcia, and that Odom-Alvarado never spoke to her about the booker position. The Scott affidavit supports Benson Imports position that no evidence exists that Odom-Alvarado applied for either position.

Odom-Alvarado did not address this aspect of Benson Imports's motion. Instead, she addressed the unlawful discharge claim discussed below. Nevertheless, Odom-Alvarado's summary judgment evidence supports Benson Imports's argument about the failure-to-promote claim—specifically, Scott's deposition and Odom-Alvarado's deposition both of which plaintiff tendered in opposition to the motion for summary judgment.

In her deposition, Scott testified that although Stohner supervised the warranty administrator position, Scott made the decision to hire Garcia because Stohner had not been at Benson Imports long enough to make the decision. Scott stated that she was on vacation for nine days beginning on October 15th—the day Jackson gave her notice of leaving Benson Imports—and that she did not learn that Jackson was leaving until she returned from vacation when Debbie Sutherland told her that Jackson had resigned. She testified that during her absence, Lovering and Stohner placed Miorelli—who worked as a cashier—in the warranty

administrator position. Scott stated that she felt Miorelli did not have the experience to work as a warranty administrator and approached Garcia about the position after she returned from vacation. She explained that Garcia already knew the codes needed to work as a warranty administrator from her work as a booker, Garcia had previously assisted the warranty administrator, and Garcia's work was phenomenally accurate. Scott explained that in addition to Garcia, Benson Imports had a part-time booker— Roland Ibarra. She stated that once she hired Garcia as warranty administrator she hired Ibarra as full-time booker. This testimony supports Benson Imports's argument because it shows Scott never sought applications for the warranty administrator and booker positions, but instead hired within the company from people Scott believed were qualified for the jobs.

     Odom-Alvarado's deposition also supports Benson Imports's argument. In her deposition, Odom-Alvarado testified that she first began working for Benson Imports in May 2000 as a cashier. She explained that she first talked with Lovering in 1999 when she was looking for a job. She stated that Lovering told her that Benson Imports's warranty administrator job was already filled by someone who had been with the car dealership for a long time. She explained that after working for Benson Imports for several months, she resigned for an opportunity to make more money at another dealership. She testified that after she was subsequently laid off, Lovering called her about returning to Benson Imports. She stated that she agreed to return as a cashier in March 2001. When questioned about how she learned that the warranty administrator job was opening, Odom-Alvarado stated that she was off on October 15, 2003 when Richard Lovering left, but learned the next day that Jackson was leaving Benson Imports and that Miorelli had been placed in the warranty administrator position. She testified that she gave Stohner a copy of her resume and told him that she was qualified for the warranty

administrator position, and that Stohner told her he would think about it. She also testified that she approached Scott when she returned from vacation and asked why she had not been given the opportunity to prove that she could do the warranty administrator job. Odom-Alvarado admitted that by that time, Scott had removed Miorelli from the warranty administrator position and placed Garcia in the position. Odom-Alvarado recalled that Scott told her that she (Scott) had not known that she (Odom-Alvarado) was interested in the position. Odom-Alvarado admitted that although she had previously told Lovering that she was interested in the warranty administrator position, she had never spoken to Scott about her interest in the warranty administrator position. She also admitted that she had inquired about the booker position in the past, but that she had not inquired about the position when Garcia was moved to the warranty administrator position. Odom-Alvarado could not recall telling Scott that she was interested in the booker position. This testimony supports Benson Imports's argument because it indicates Odom-Alvarado never applied for the warranty administrator or booker position, and that she never told decision-maker Scott that she was interested in those positions before Scott filled the openings.

Odom-Alvarado has failed to present evidence that raises a question about whether she applied for a position for which applicants were being sought. Consequently, Benson Imports is entitled to summary judgment on Odom-Alvarado's failure-to-promote claim because no evidence exists that she applied for a position for which applicants were being sought.[6]

### Odom-Alvarado's Unlawful Discharge Claim under the ADEA

Benson Imports moved for summary judgment on Odom-Alvarado's failure-to-promote

---

[6] See Medina v. Ramsey Steel Co., 238 F.3d at 680-81 (setting out the elements for a prima facie case in a failure-to-promote discrimination case).

claim, but it did not specifically move for summary judgment on Odom-Alvarado's unlawful discharge claim. In its prayer, however, Benson Imports asked for dismissal of all of Odom-Alvarado's claims, indicating that Benson Imports seeks complete summary judgment. Although Benson Imports did not move for summary judgment on the unlawful discharge claim, Odom-Alvarado presented her argument about why summary judgment is inappropriate on that claim in her response to Benson Imports's motion for summary judgment. Benson Imports responded to that argument in its reply to Odom-Alvarado's response. In addition, Odom-Alvarado presented summary judgment evidence to support her argument that summary judgment is precluded on her unlawful discharge claim. Because my initial examination of the summary judgment evidence identified no evidence that raised a fact issue about whether Benson Imports's reason for terminating Odom-Alvarado was a pretext for discrimination, I determined that summary judgment might be appropriate.

Ordinarily, a court may not enter summary judgment in the absence of a written motion.[7] But summary judgment is permitted in the absence of a written motion if a written motion is unnecessary and the parties have adequate notice and an opportunity to be heard.[8] Even though a written motion appeared unnecessary because the parties had already addressed the appropriateness of summary judgment on the unlawful discharge claim, I notified Odom-Alvarado that I saw no evidence that raises a fact question about whether Benson Imports's stated reason for terminating Odom-Alvarado was a pretext for age discrimination and that I was

---

[7] *See* FED. R. CIV. P. 56 (providing for motions for summary judgment); *Matter of Hailey*, 621 F.2d 169, 171 (5th Cir. 1980) (observing that Rule 56 does not indicate that a judge may render a summary judgment sua sponte).

[8] *See Matter of Hailey*, 621 F.2d at 171 (explaining that a party must be timely served and given an opportunity to respond and present summary judgment evidence).

considering a recommendation for summary judgment on the unlawful discharge claim.[9] Odom-Alvarado responded,[10] and I have considered her response in reaching this recommendation.

In an age discrimination case, the plaintiff bears the initial burden of first establishing a prima facie case of unlawful discrimination.[11] The plaintiff can meet this burden by showing that (1) she was discharged; (2) she was qualified for the position; (3) she was within the protected class at the time of discharge; and (4) she was either replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of her age.[12] The parties do not dispute that Odom-Alvarado met this burden.

"Establishing the prima facie case raises an inference of unlawful discrimination, and the burden of production then shifts to the defendant-employer to proffer a legitimate, nondiscriminatory reason for the challenged employment action."[13] If the defendant-employer meets this burden, the plaintiff must then produce evidence to demonstrate that the employer's presumably nondiscriminatory reason for terminating her was a pretext for intentional discrimination.[14] In this case, Benson Imports maintains it terminated Odom-Alvarado because her FMLA leave expired and Odom-Alvarado failed to return to work upon the expiration of her leave. As evidence of its reason for termination, Benson Imports presented a letter dated

---

[9]*See* docket entry # 49.

[10]*See* docket entry # 52.

[11]*See Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 142 (2000).

[12]*Rachid v. Jack In The Box*, 376 F.3d 305, 309 (5th Cir. 2004).

[13]*Blow v. City of San Antonio*, 236 F.3d 293, 296-97 (5th Cir. 2001) (explaining burden shifting in a race discrimination case). *See Baker v. American Airlines*, 430 F.3d 750 (5th Cir. 2005) (applying the same burden shifting to an age discrimination case).

[14] *See Baker*, 430 F.3d at 753.

February 4, 2004 and Scott's affidavit. In the letter, Benson Imports notified Odom-Alvarado that her twelve weeks of FMLA leave would expire on February 8, 2004 and that she would be terminated if she could not return to work on February 9, 2004. In her affidavit, Scott attested that Odom-Alvarado was terminated because she did not return to work on February 9, 2004.[15] Because Benson Imports's explanation constitutes a legitimate, nondiscriminatory reason for termination, Odom-Alvarado must produce evidence to raise a fact question about whether Benson Imports's presumably nondiscriminatory reason for terminating her was a pretext for age discrimination.[16]

"Whether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'" In this case, Odom-Alvarado maintains that the evidence taken as a whole creates a fact issue about whether Benson Imports's stated reason was the real reason for terminating her. First, she asserts that the stated reason is pretextual because Benson Imports never informed her that failing to return to work after her FMLA leave expired was a basis for termination. The summary judgment evidence contradicts this assertion. In support of its motion for summary judgment, Benson Imports presented a memorandum signed by Odom-Alvarado on October 29, 2003—the day she applied for FMLA leave. That memorandum states in relevant part as follows:

> If you are able to return to work at the end of twelve weeks, you will be restored

---

[15]The affidavit reads "February 9, 2005," but this appears to be a typographical error.

[16]See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973) (discussing "the order and allocation of proof in a private, non-class action challenging employment discrimination"); *Baker*, 430 F.3d at 753-54 (applying the order and proof to an age discrimination claim).

> to your previous position or one that is genuinely equivalent. However, if you fail to show up for the first scheduled work day after the expiration of 12 weeks of leave, you will be considered as having voluntarily resigned from your position unless you have completed a request for a leave of absence and that leave is approved under one of the other leave provisions.

This evidence shows that Odom-Alvarado knew that Benson Imports would not hold her job for her if she did not report to work at the end of 12 weeks of FMLA leave. Thus, Odom-Alvarado's first argument does not raise a fact question about pretext.

As her second reason for why summary judgment is precluded, Odom-Alvarado maintains that she presented strong circumstantial evidence that her termination was in retaliation for her earlier complaints about the hiring for the warranty administrator position. In her initial response to the motion for summary judgment, she relies on the affidavit of her expert who opined that she was suspicious of Benson Imports's actions because Odom-Alvarado's position was an entry-level cashier position that Benson Imports could have easily covered until Odom-Alvarado returned to work. In her response to my notice about summary judgment, she expanded her argument to include other evidence she maintains raises a fact question about whether Benson Imports terminated her in retaliation for complaining about the warranty administrator position. The argument fails for two reasons. First, although the EEOC's determination suggested that Odom-Alvarado was discharged because she believed she was not promoted because of her age, Odom-Alvarado has not previously alleged that she was fired in retaliation. Neither her charge of discrimination, her original complaint, nor her amended complaint allege retaliation. As a result, evidence of retaliation is irrelevant to Odom Alvarado's allegations. Second, the suspicions of an expert carry little probative value in proving that an employer's explanation is false. In this case, the expert's suspicion is too conclusory to raise a fact issue about pretext. Odom-Alvarado's second argument does not raise a fact question about pretext.

As her third reason for why summary judgment is precluded, Odom-Alvarado maintains that she has presented evidence that she was better qualified than the individuals chosen for the warranty administrator and booker positions. A plaintiff may raise a fact question about pretext by presenting evidence that she is "clearly better qualified" than the employee selected for the position in dispute.[17] To raise a fact question about whether she is clearly better qualified, the plaintiff must show that "disparities in qualifications [are] of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."[18] To make this showing, Odom-Alvarado relies on her resume that reflects that she had worked as a warranty administrator at another dealership in 1995 and as a booker at two other dealerships in 1990 and 1991, and a certificate showing that she had completed a training course for warranty administrators. Although this evidence may establish Odom-Alvarado's qualifications to work as a warranty administrator, it does not demonstrate qualifications of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen Garcia or Ibarra over Odom-Alvarado for the warranty administrator and booker positions. Thus, Odom-Alvarado's third reason does not raise a fact question about pretext.

The summary judgment evidence indicates that Benson Imports terminated Odom-Alvarado because she failed to return to work on the first scheduled work day after her FMLA leave expired. Although Odom-Alvarado may have developed an expectation of prevailing on her unlawful discharge claim based on the EEOC's determination—that there was reasonable

---

[17] *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 356-57 (5th Cir.2001) (discussing how a plaintiff can demonstrate pretext).

[18] *Deines v. Tex. Dep't of Protective & Regulatory Services*, 164 F.3d 277, 280-81 (5th Cir. 1999).

cause to believe that she was discharged because she believed that she had been discriminated against because of her age—no evidence exists that raises a fact question about whether Benson Imports terminated her because she failed to return to work on the first scheduled work day after her FMLA leave expired. Consequently, Benson Imports is entitled to summary judgment on Odom-Alvarado's unlawful discharge claim.

### Odom-Alvarado's FMLA Claim

In its motion, Benson Imports also seeks summary judgment on Odom-Alvarado's FMLA claim on grounds that Odom-Alvarado cannot establish a casual connection between her request for FMLA leave and her discharge. My review of the summary judgment evidence supports this argument. Odom-Alvarado conceded this point in her response to the motion for summary judgment. Summary judgment is therefore appropriate on this claim.

### Other Pending Motions

After Odom-Alvarado responded to Benson Imports's motion for summary judgment, Benson Imports filed numerous objections to Odom-Alvarado's response and moved to strike the response. In its motion, Benson Imports objected to specific portions of the response that it found objectionable; however, I did not consider the objected-to portions of the response. Consequently, no reason exists to rule on that motion. If the district court accepts my recommendation for summary judgment, the district court may DENY the motion (docket entry # 45) as moot. If the district court does not accept my recommendation, I will further consider the motion to strike upon instruction from the district court.

In addition to Benson Imports's motion to strike, Odom-Alvarado moved to strike Benson Imports's supplement to its motion for summary judgment. The supplement alerted the Court to a recent order from this district. I did not rely on that order. If the district court accepts

my recommendation on the summary judgment motion, the district court may DENY the motion to strike the supplement (docket entry # 48) as moot.  If the district court does not accept my recommendation, I will further consider the motion upon instructions from the district court.

## Recommendation

For the reasons discussed above, I recommend that the district court GRANT the motion for summary judgment (docket entry # 40), DENY the motion to strike (docket entry # 45) as moot, DENY the motion to strike the supplement (docket entry # 48) as moot, and ENTER summary judgment in favor of Benson Imports .

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties who have entered an appearance, by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified.[19]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**   A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the

---

[19] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

District Court.[20]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[21]

**SIGNED** on December 28, 2006.

*[signature]*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[20]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[21]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).